UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANDREW JOHN STANKEVICH                                            PLAINTIFF

V.                                         CIVIL ACTION NO. 3:25-CV-150-KHJ-MTP

DEBORAH SOLER MUNCZEK                                            DEFENDANT

ORDER

Before the Court are Defendant Deborah Soler Munczek's [17] Motion to Dismiss and [24] Motion to Strike. The Court grants the [17] Motion and finds as moot the [24] Motion.

I.     Background

When he was in law school more than a decade ago, pro se Plaintiff Andrew John Stankevich ("Stankevich") made a social media post that got him in trouble. School administrators labeled him a security concern, banned him from campus, and ordered him to undergo a psychological evaluation. Stankevich claims the isolation turned him psychotic. He sued the law school over its decision, but he ultimately lost. Now he targets Dr. Deborah Munczek, the psychologist who evaluated him.

The Fifth Circuit chronicled Stankevich's law school journey in *Stankevich v. Miss. Coll. Sch. of Law*, No. 24-60087, 2024 WL 4056610 (5th Cir. Sept. 5, 2024) (per curiam). Here, the Court recounts that journey only as it relates to the pending motions.

Stankevich enrolled at Mississippi College School of Law ("MC Law") in 2009. *Id.* at *1. He earned a spot on the Dean's List, and he regularly organized events for visiting speakers. *Id.* Things soured in Stankevich's second year though. *Id.* His mental health suffered, and he began self-isolating and having disturbing thoughts. *Id.* Professors worried that Stankevich could be a danger to himself and others. *Id.*

In the fall of Stankevich's third year, MC Law hosted a pro-life attorney who spoke about pending anti-abortion legislation. Am. Compl. [15] at 3. Afterward, Stankevich posted on social media: "God smites MC Law and MC undergrad . . . the staff and students that suck all die a horrible death. Ha ha ha." *Id.* at 3–4.

After Stankevich's post, MC Law labeled him a safety concern. *Id.* at 4. Administrators banned Stankevich from campus and ordered him to undergo a psychological evaluation. *Id.*; *Stankevich*, 2024 WL 4056610, at *1. The school provided a list of approved psychologists and offered to pay for the evaluation. *Stankevich*, 2024 WL 4056610, at *1. Stankevich engaged Dr. Munczek to evaluate him. [15] at 4.

Dr. Munczek evaluated Stankevich at her New York office in December 2011. *Id.* Afterward, Stankevich prohibited Dr. Munczek from sharing her psychological findings with MC Law. *Id.* She reported those findings to MC Law anyway. *Id.*

MC Law kept Stankevich banned from campus until he graduated in May 2014. *Id.* at 4–5. During that time, Stankevich "became extremely isolated, and would go for weeks, even months, without having a conversation with another person." *Id.* at 5. Eventually, Stankevich was diagnosed with psychosis. *Id.* at 7. He

2

describes himself now as "an SSI disability recipient who ha[s] been adjudicated as totally unable to work." *Id.* at 9.

In Stankevich's view, Dr. Munczek caused his condition. He says two other psychologists cleared him to return to campus, and it was only Dr. Munczek's unauthorized medical report that caused MC Law to ban him permanently. *Id.* at 4. This ban "psychologically conditioned [Stankevich] to believe that he was a danger to himself and others." *Id.* at 9. And that is why he "never pursued employment after graduating." *Id.*

Stankevich sued Dr. Munczek for negligence, malpractice, breach of fiduciary duty, and intentional infliction of emotional distress. *Id.* at 12. Dr. Munczek moved to dismiss Stankevich's claims under Federal Rule of Civil Procedure 12(b)(6), asserting a statute of limitations defense. Mot. to Dismiss [17]. Dr. Munczek also moved to strike Stankevich's procedurally improper [23] Reply to the [17] Motion. *See* Reply [23]; Mot. to Strike [24]. For the reasons below, the Court grants the [17] Motion and finds as moot the [24] Motion.

II.   Standard

Dr. Munczek asks the Court to dismiss Stankevich's lawsuit under Federal Rule of Civil Procedure 12(b)(6). *See* [17] at 1; Mem. in Supp. of Mot. to Dismiss [18] at 1. In reviewing a Rule 12(b)(6) motion, "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). A valid claim for relief contains "sufficient factual matter, accepted as true," giving the claim "facial plausibility"

and allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

This standard governs Stankevich even though he is self-represented. Sure, the Court liberally construes pro se litigants' pleadings, but they still must "abide by the rules that govern the federal courts." *EEOC v. Simbaki Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (citation modified). And the rules require that Stankevich "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief." *Id.*

Dr. Munczek says Stankevich's claims are implausible because they are untimely. [17, 18]. Her Rule 12(b)(6) motion is an appropriate way to raise this defense. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.")

Guided by these standards, the Court turns to whether Stankevich's [15] Amended Complaint states a plausible claim for relief.

III.   Analysis

There are three primary issues before the Court. First, what limitations period applies to Stankevich's claims? Second, does Stankevich qualify for disability tolling under Mississippi Code Section 15-1-59? Third, does Stankevich qualify for "latent injury" tolling under Mississippi Code Section 15-1-49?

As explained below, the Court applies Mississippi's seven-year medical malpractice limitations period, rejects Stankevich's tolling theories, and dismisses his claims as untimely. The Court also discusses why, even putting aside the time-bar, Stankevich fails to state a claim for relief.

A. Miss. Code § 15-1-36: Medical Malpractice Limitations Period

The Court first decides which limitations period applies to Stankevich's claims. Dr. Munczek says they fall under Mississippi's seven-year medical malpractice statute of repose. [18] at 4; Miss. Code Ann. § 15-1-36. Stankevich counters that Section 15-1-36 does not apply since Dr. Munczek is a psychologist, and Section 15-1-36 does not explicitly mention psychologists. [15] at 11–12, Pl.'s Resp. to Mot. to Dismiss [21] at 5–6. The Court agrees with Dr. Munczek. The seven-year limitations period in Section 15-1-36 applies because Stankevich brings medical malpractice claims.

As relevant here, Section 15-1-36 provides:

> For any claim accruing on or after July 1, 1998 . . . no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, institution for the aged or infirm, nurse, pharmacist, podiatrist, optometrist or chiropractor for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered, and, except as described in paragraphs [not applicable in this case], in no event more than seven (7) years after the alleged act, omission or neglect occurred[.]

Miss. Code Ann. § 15-1-36; *see also Wolfe v. Delta Disc. Drugs*, 291 So. 3d 339, 342 (Miss. 2020) (noting that Section 15-1-36 applies to "injuries . . . arising out of the course of medical, surgical[,] or *other professional services*") (emphasis added). And

5

"medical or professional services include all aspects of medical evaluation, treatment, and care that involve the application of special skill or knowledge." *Id.* (citation modified). Under this definition, Stankevich's claims against Dr. Munczek fall within the scope of Section 15-1-36.

Stankevich's claims all stem from Dr. Munczek providing "medical or professional services" to him, namely working as a psychologist to assess his mental health and communicate the results to MC Law. [15] at 1; *Wolfe*, 291 So. 3d at 342. It is inconceivable that those services were anything but "medical evaluation . . . that involve[d] the application of special skill or knowledge." *Wolfe*, 291 So. 3d at 342. Stankevich does not dispute that Dr. Munczek is a professionally licensed psychologist. [15] at 1. In fact, he emphasizes how licensing authorities suspended Dr. Munczek for "professional misconduct" after she shared his information with MC Law. *Id.* Stankevich even calls Dr. Munczek's conduct "malpractice" and insists her "professional opinions" led MC Law to ban him from campus. *Id.* at 1, 10. His claims against Dr. Munczek—negligence, malpractice, breach of fiduciary duty, and IIED—are "inherently connected with [Dr. Munczek's] providing of a professional medical service so as to fall within the purview of [Section] 15-1-36." *Bell v. W. Harrison Cnty. Dist.*, 523 So. 2d 1031, 1033 (Miss. 1988).

Stankevich argues that Section 15-1-36 does not apply to psychologists because it does not explicitly name them. *See* [15] at 11–12, [21] at 5–6. The Court is unconvinced. Federal and state courts in Mississippi have broadly applied medical malpractice protections to claims "arising out of the course of professional

6

services," even when the statute did not expressly name the provider. *See Lyons v. Biloxi H.M.A., Inc.*, 925 So. 2d 151 (Miss. Ct. App. 2006) (extending malpractice expert requirements to claims against a physical therapy clinic); *Wolfe*, 291 So. 3d at 342 (applying Section 15-1-36 to claims against a pharmacy); *Scott v. Vital Core Strategies*, No. 23-60599, 2025 WL 471110, at * 2 (5th Cir. Feb. 12, 2025) (applying Section 15-1-36 to third-party medical provider at a correctional facility); *Levy v. DaVita, Inc.*, No. 3:18-CV-173-DPJ-LRA, 2018 WL 5625178 (S.D. Miss. Oct. 30, 2018) (analyzing claims against a dialysis clinic under Section 15-1-36). The Court finds the same outcome appropriate here. Stankevich's claims against Dr. Munczek arise directly from her providing professional psychological services to him, so they are subject to the seven-year limitations period of Section 15-1-36.

The Court turns then to whether Section 15-1-36 bars Stankevich's claims. It does. Under Section 15-1-36, Stankevich had to sue Dr. Munczek "in no event more than seven (7) years after the alleged act, omission or neglect occurred." Miss. Code Ann. § 15-1-36(2). Stankevich insists it was Dr. Munczek's March 7–8, 2012 communications to MC Law that injured him. [15] at 1–2. But he waited nearly 13 years—until March 3, 2025—to sue her. *See* Compl. [1]. So Section 15-1-36 bars his claims.[1]

---

[1] Consider the alternative. Even if Stankevich's claims are not medical malpractice claims, they are barred by one-year or three-year limitations periods. *See Tanks v. NEAS, Inc.*, 519 F. Supp. 2d 645, 652–53 (S.D. Miss. 2007) (recognizing that three-year limitations period governs nonmedical, ordinary negligence claims); *Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 421–22 (Miss. 2010) (applying one-year limitations period to IIED claim); *Johnson Trucking Co. v. Peterbilt of Miss., Inc.*, 149 So. 3d 536, 539 (Miss. Ct. App. 2014) (three-year limitations period applies to fiduciary duty claims). Stankevich sued Dr. Munczek for work

7

B. No Tolling

Stankevich makes two arguments to escape the time bar: (1) that Mississippi Code Section 15-1-59 entitles him to "psychiatric disability tolling" and (2) that Mississippi Code Section 15-1-49 entitles him to "latent injury tolling." [15] at 10–11. Neither argument prevails.

    i.    Mississippi Code Section 15-1-59; "Psychiatric Disability Tolling"

Stankevich contends that Section 15-1-59 tolled the running of the limitations period while he was in a state of psychosis. [15] at 2, 10–12; [21] at 1–2. Because Stankevich has not plausibly alleged mental incompetence, Section 15-1-59 does not save his claims.

Section 15-1-59—often referred to as the "savings statute"—states:

> If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law. However, the saving in favor or persons under disability of unsoundness of mind shall never extend longer than twenty-one (21) years.

Miss. Code Ann. § 15-1-59; *see also Brumfield v. Lowe*, 744 So. 2d 383, 387 (Miss. Ct. App. 1999) (citation modified) (recognizing that the purpose of the "savings statute" is to protect disabled persons' legal rights).

To determine whether a plaintiff is so "mentally incompetent" that he qualifies for tolling under Section 15-1-59, a court asks: "Is his mind so unsound, or is he so weak in mind, or so imbecile, no matter from what cause, that he cannot

---

she did in 2012, more than a decade before he sued her. And, contrary to what Stankevich argues, his medical condition did not toll those deadlines. *See infra* Section III.B.i–ii.

manage the ordinary affairs of life?" *Id.* (citation modified). A plaintiff does not need his disability legally adjudicated to qualify for tolling under Section 15-1-59. *Rockwell v. Preferred Risk Mut. Ins. Co.*, 710 So. 2d 388, 391 (Miss. 1998). But, without legal adjudication, he must "present alternative evidence to prove that he lacked the requisite understanding for handling his legal affairs." *Id.* The plaintiff bears the burden of proof, and he must prove his disability by clear and convincing evidence. *Stroud v. Progressive Gulf Ins. Co.*, 239 So. 3d 516, 521 (Miss. Ct. App. 2017).

To support his disability allegations, Stankevich relies on an affidavit from Max Guttman, a licensed clinical social worker. [15] at 10; [21] at 1–2; Guttman Aff. [15-2]. Mr. Guttman avers that he "carefully reviewed the allegations and facts set forth in the initial complaint [in this case]." [15-2] ¶ 5. Based on that review, along with his "professional expertise" and "extensive experience," Mr. Guttman draws several conclusions about Stankevich's medical history, including that Stankevich "did not accept or understand his [psychosis] diagnosis until mid-2023." [15-2] ¶¶ 12, 13.

But Mr. Guttman's opinions are conclusory. He speculates that Stankevich showed symptoms of untreated psychosis from 2012 to mid-2023 and that the psychosis impaired Stankevich's ability to manage his legal and personal affairs. [15-2] ¶ 7. But Mr. Guttman does not say when or how he came to know Stankevich. And, frankly, Mr. Guttman appears to lack any personal knowledge of Stankevich's condition. Mr. Guttman never says he examined Stankevich or even reviewed

9

Stankevich's medical records. Simply put, Mr. Guttman's "expert opinion" seems to be based strictly on his review of Stankevich's allegations and Mr. Guttman's general understanding of psychosis. [15-2] ¶ 13. This is not enough to prove that Stankevich was mentally unsound for more than a decade. *See Stroud*, 239 So. 3d at 524 (finding that doctors' conclusory opinions were insufficient to prove unsound mind); *Buckley v. Singing River Hosp.*, 146 So. 3d 365, 375 (Miss. Ct. App. 2013) (upholding circuit court's rejection of an expert opinion based solely on a patient's self-reported medical history).

Even more, Stankevich's own allegations undermine his disability argument. Between 2012 (when Dr. Munczek shared her findings with MC Law) and March 2023 (when Stankevich filed this lawsuit), Stankevich admits that he:

- Finished his coursework and graduated from MC Law;
- Communicated by email with MC Law;
- Communicated with the New York State Education Department regarding Dr. Munczek's disciplinary proceedings; and
- Communicated with attorneys and litigated cases against MC Law and others.

*See* [15] at 4, 6–7; N.Y. Disciplinary Records [15-3] at 2; *see also* [22] at 3 (detailing Stankevich's litigation experience). Furthermore, Stankevich alleges that he lived in isolation for years, which leads the Court to reasonably assume that he lived on his own and managed his own household affairs. [15] at 5. Put simply, Stankevich never plausibly alleges he was incapable of "manag[ing] the ordinary affairs of [his] life." *Brumfield*, 744 So. 2d at 387; *see also Vick v. Brandon HMA, LLC*, 167 So. 3d

259, 263 (Miss. Ct. App. 2015) (rejecting unsound mind argument where the plaintiff managed some of her own affairs including "actively and coherently" participating in litigation). So Section 15-1-59 is inapplicable to Stankevich's claims.[2]

  ii.  Mississippi Code Section 15-1-49; "Latent Injury Tolling"

Alternatively, Stankevich argues that "latent injury tolling" saves his claims. [15] at 10–11; [21] at 1. The Court construes this as an attempt to invoke the "discovery rule" of Mississippi Code Section 15-1-49(2). *See PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 50 (Miss. 2005) (synopsizing the "discovery rule"). But, because Stankevich does not legitimately allege a latent injury, Section 15-1-49 does not apply.

Section 15-1-49(2) states: "In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2). Said differently, the "discovery rule" creates an exception to the standard three-year statute of limitations where "latent injury or disease" prevented a plaintiff from timely pursuing her claims. *Id.*

So the Court considers whether Stankevich has alleged a "latent injury." *See State Indus. Prod. Corp. v. Beta Techn., Inc.*, 575 F.3d 450, 455 (5th Cir. 2009). He

---

[2] The Court rejects Stankevich's claim that the Fifth Circuit "affirmed" his psychosis in *Stankevich v. Miss. Coll. Sch. of Law*, 2024 WL 4056610, at *2; [15] at 2. Fair enough, the Court noted that "Stankevich's psychosis went undiagnosed and untreated until 2019." 2024 WL 4056610, at *2. But it did so as a summary of Stankevich's own allegations, not as an independent competency adjudication.

11

has not. A "latent injury" is one "where the plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question or when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *Id.* (citation modified).

Dr. Munczek's allegedly unlawful actions were not "undiscoverable by reasonable methods." *Id.* To the contrary, by his own allegations, Stankevich has been fully aware of Dr. Munczek's actions since December 2011 when she examined him. [15] at 4. He "revoked consent" for her to communicate with MC Law soon after her examination. *Id.* He claims that "two psychologists issued two separate sworn affidavits stating that [he] was safe to return to campus." *Id.* He also actively participated in Dr. Munczek's professional disciplinary proceedings in New York in late 2013. *See* [15-3] at 2. And those disciplinary proceedings directly stemmed from the wrongdoing Stankevich alleges here—that Dr. Munczek reported her findings to MC Law after he told her not to. *Id.* at 6.

Taking Stankevich at his word, it is clear he knew about Dr. Munczek's alleged wrongdoing for years before he filed this lawsuit. He cannot claim now that her conduct was "secretive or inherently undiscoverable." *See State Indus.,* 575 F.3d at 455; *see also Doe v. Roman Cath. Diocese of Jackson*, 947 So. 2d 983, 986 (Miss. Ct. App. 2006) (declining to apply the discovery rule even though the plaintiff did not psychologically comprehend the wrongful acts when they occurred). Absent any plausible "latent injury" allegation, the Court will not apply the discovery rule to Stankevich's claims.

C. Failure to State a Claim

Even if Stankevich's claims were timely, the Court would still dismiss the [15] First Amended Complaint for failure to state a claim. Despite it being Stankevich's second attempt to plead his case, the [15] First Amended Complaint does nothing to tie Stankevich's narrative allegations to his causes of action. *See* [15] at 1–13. In fact, other than summarily listing them in the first and last paragraphs of the [15] First Amended Complaint, Stankevich does not address his causes of action at all. *Id.* at 1, 12. This conclusory pleading fails to satisfy the standards of Federal Rule of Civil Procedure 8(a). Fed. R. Civ. P. 8(a); *Bell Atl. Corp.*, 550 U.S. at 555 (requiring a plaintiff to plead "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action").

And the Court would deny Stankevich any further attempts to amend. He has had ample opportunity to state a viable claim but has failed to do so. *See Hines v. Graham*, 320 F. Supp. 2d 511, 529 (N.D. Tex. 2004) (citing *Marcias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 98 n.5 (5th Cir. 1994)) ("a district court is not required to give a pro se plaintiff repeated opportunities to amend his complaint or explain the basis of his pleadings"). So, even if Stankevich's claims were not time-barred, the Court would still dismiss the [15] First Amended Complaint for failure to state a claim, deny further leave to amend, and dismiss Stankevich's case with prejudice.

IV.     Conclusion

Stankevich's claims are untimely, and no tolling theory saves them. Additionally, the [15] First Amended Complaint fails to state a claim for relief. Accordingly, the Court GRANTS the [17] Motion, finds as moot the [24] Motion, and dismisses all claims with prejudice. The Court has considered all arguments. Any arguments the Court did not address would not have changed the outcome

The Court will issue a final judgment consistent with this Order.

SO ORDERED, this 20th day of January, 2026.

s/ *Kristi H. Johnson*  
UNITED STATES DISTRICT JUDGE